PER CURIAM.
 

 Colonial Bank, N.A., brings this interlocutory appeal from an order temporarily enjoining M and T Bank from releasing the proceeds of a $2 million letter of credit
 
 [1]
 
 to Colonial Bank. We reverse.
 

 Taylor Morrison Services, Inc., (f/k/a Morrison Homes, Inc.) agreed to pay a $2 million deposit, in the form of a letter of credit, to secure a loan from Colonial Bank to finance the development of a townhome subdivision on property owned by Earley Development. Under the contract for purchase and sale executed July 1, 2005, and as later amended, Earley Development agreed to undertake lot preparation and infrastructure improvements to “finish”
 
 [2]
 
 the lots, in exchange for Morrison’s agreement to buy the lots at closing. The contract required that all lots be “finished” no later than 180 days after the date all permits and approval required to begin development were obtained.
 

 The conflict arose when Morrison notified Earley Development of its default for
 
 *655
 
 failing to finish the lots by September 3, 2007, 180 days after the permitting date of March 3, 2007. Pursuant to the contract, Morrison allowed Earley Development 30 days to cure the default. Earley Development disputed it was in default, contending that April 11, 2007, was the actual permitting date, and that the default cure provision allowed 150 days plus an additional 90 days, if necessary, to cure a condition precedent
 
 [3]
 
 to closing. Morrison nonetheless noticed the default, and one month later, treating the contract as terminated, demanded a return of the letter of credit. Subsequently, Earley Development declared Morrison in default for failing to pay property taxes and demanded the $2 million letter of credit.
 

 Colonial Bank responded to the competing demands on the letter of credit by invoking section 2.2.3 of the contract and advising both parties that it would hold the letter of credit pending a court order or express written instructions from both parties. However, when Earley Development formally declared Morrison in default for failing to pay real estate taxes, Colonial Bank altered its position and demanded the proceeds of the letter of credit from M and T Bank.
 

 Morrison’s ensuing emergency motion for temporary injunction sought to prevent Colonial Bank’s draw on the funds, and hearings followed. The trial court granted the motion, finding that money damages alone were an inadequate remedy and that Morrison demonstrated a likelihood of success on the merits by presenting evidence that Earley Development breached the contract first and that this breach entitled Morrison to the deposit in the form of the letter of credit. Consequently, the trial court enjoined M and T Bank from releasing the letter of credit to Colonial Bank and required Colonial Bank to withdraw its demand.
 

 We disagree and conclude the elements for injunctive relief were not met. Injunctions are an extraordinary remedy, which must be granted sparingly.
 
 Hiles v. Auto Bahn Fed’n, Inc.,
 
 498 So.2d 997, 998 (Fla. 4th DCA 1986). A temporary injunction may be entered if the party seeking the injunction establishes the following: (1) the likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) a substantial likelihood of success on the merits; and (4) consideration of the public interest.
 
 Yardley v. Albu,
 
 826 So.2d 467, 470 (Fla. 5th DCA 2002). If these criteria are established, the trial court, in entering the injunction, must comply with Florida Rule of Civil Procedure 1.610(c), by specifying the reasons and describing in reasonable detail the acts restrained. Fla. R. Civ. P. 1.610(c);
 
 Yardley,
 
 826 So.2d at 470.
 

 Morrison’s sole reliance on the contract’s general default provision in section 10 does not buttress the trial court’s conclusion that it demonstrated a likelihood of success on the merits. Colonial Bank persuasively argues that the more specific default provision in section 5.2 applies to Earley Development’s duty to finish the lots. A contract provision specifically dealing with a particular subject controls over a general provision dealing with that same subject.
 
 Idearc Media Corp. v. M.R. Friedman & G.A. Friedman, P.A.,
 
 985
 
 *656
 
 So.2d 1159, 1161 (Fla. 3d DCA 2008). While the more general default provision undisputedly applies to Morrison’s failure to pay real estate taxes, the longer cure periods under section 5.2 suggest that its default may have occurred before Earley Development’s default.
 

 Prior to issuing a temporary injunction, a trial court must be certain that the petition or other pleadings demonstrate a prima facie, clear legal right to the relief requested.
 
 Naegele Outdoor Adver. Co. v. City of Jacksonville,
 
 659 So.2d 1046, 1048 (Fla.1995). It must appear that the petition has a substantial likelihood of success, on the merits.
 
 Id.,
 
 quoting
 
 Mid-Florida of Eustis, Inc. v. Griffin,
 
 521 So.2d 357, 357 (Fla. 5th DCA 1988). Accordingly, we must conclude that the trial court abused its discretion in determining that Morrison satisfied the elements for an injunction. The temporary injunction is quashed.
 

 REVERSED.
 

 PALMER, C.J., GRIFFIN and COHEN, JJ., concur.
 

 [1]
 

 . Colonial Bank agreed that it would not be prejudiced if Taylor Morrison Services, Inc., substituted $2 million cash for the letter of credit so long as the cash was subject to the same terms and conditions as the letter of credit. The court so ordered, and Morrison placed $2 million cash in escrow.
 

 [2]
 

 . A “finished lot" meets all of the contract's requirements for the issuance of a building permit.
 

 [3]
 

 . Section 5.1 of the contract enumerated the conditions precedent to closing, which in pertinent part, specified:
 

 [A]ll of [Earley Development's] preparation of Lots requirements set forth in Section 4 shall have been completed for the Lots to be Finished Lots, and [Earley Development’s] engineer shall have delivered to [Morrison] a copy of said engineer’s certificate to the County of completion of such subdivision and Lots therein;....